UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

PAUL BURKE, *Pro Se*

    Plaintiff,

vs.

U.S. DEPARTMENT OF HEALTH AND
    HUMAN SERVICES

Defendant.

Case: 1:16-cv-00825 (CRC)

# PLAINTIFF'S MOTION FOR AWARD OF COSTS

Plaintiff Paul Burke respectfully petitions the Court for an award of costs as provided by the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E). Plaintiff only seeks payment of the $400 filing fee.

Plaintiff filed a Notice of Voluntary Dismissal on June 30, 2016 after receiving the documents requested. Plaintiff has substantially prevailed and received the documents by "a voluntary or unilateral change in position by the agency" (5 U.S.C. § 552(a)(4)(E)(ii)). He has provided public benefit, putting the important information online, without commercial benefit to him. Defendant HHS acted unreasonably in withholding for years information which it had provided to other members of the public, and in authorizing the original deciding official to make decisions on the administrative appeal.

Plaintiff is filing this motion to keep the case moving, in case settlement negotiations fail to resolve the remaining issue of cost. Pursuant to Local Civil Rule 7(m) Plaintiff has discussed with HHS counsel, and the agency takes no position at this time.

## ELIGIBILITY FOR AWARD OF COSTS

5 U.S.C. § 552(a)(4)(E) says,

"(i) The court may assess against the United States… litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

"(ii) For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through… a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."

For almost three years HHS improperly refused to release the documents. They keep the documents on a password-protected web portal for instant release to Accountable Care Organizations, which serve Medicare patients (Exhibit 6 and paragraph 7 in Plaintiff's Declaration filed with this Motion). HHS could have accessed the documents and given them to Plaintiff instantly. Instead, HHS released the documents 1,059 days after it received the FOIA request, 440 days after it received the administrative appeal, but only 35 days after the court case was filed, one day after HHS FOIA staff told Plaintiff they were aware of the court case, and on the same day the HHS Answer to the Complaint was originally due.

HHS only provided the documents when they were facing the deadline to respond to the lawsuit. The timing of this "unilateral change in position by the agency" was too far from the dates of the request and the administrative appeal, and too close to the court filing, to be coincidental. Dates are documented in the Plaintiff's Declaration.

Requests for costs in FOIA cases survive dismissal of the underlying case (Carter v. VA, 780 F.2d 1479, 1481 (9th Cir. 1986); Anderson v. HHS, 3 F.3d 1383, 1385 (10th Cir. 1993)).

ENTITLEMENT FOR AWARD OF COSTS

Four aspects entitle the plaintiff to award of his costs (Davy v. CIA, 550 F.3d 1155, 1159 (D.C. Cir. 2008)):

**(1) Public benefit derived from the case** - CMS has 430 Accountable Care Organizations participating in the "Shared Savings Program" in 49 states and DC, serving 7.7 million patients (Exhibit 12 in Plaintiff's Declaration, "Medicare Makes Enhancements to the Shared Savings Program ..." Press release June 6, 2016 from Centers for Medicare and Medicaid Services, "CMS"). With 7.7 million patients, this is a large effort by CMS to give financial

rewards to doctors and hospitals participating in Accountable Care Organizations, when they reduce unnecessary spending on their Medicare patients (42 CFR 425.604(d) and 425.606(d)). Documents obtained by this case govern the wording which these organizations must use to tell patients about the program and its incentives (42 CFR 425.20 and 425.310(c)). Because of this case, anyone can now see this wording, which covers important topics such as reducing the cost of Medicare and coordinating care.

Plaintiff has already posted the documents received in this case online for anyone to see, and he is preparing an analysis for publication (paragraph 1 in Plaintiff's Declaration).

**(2) Lack of commercial benefit to the plaintiff** - Plaintiff derives no income from the information, nor from his website, which does not take advertisements and is maintained as a contribution to the public interest.

**(3) Nature of the plaintiff's interest in the records** - Plaintiff needed the records to report fully on how Medicare patients are informed about Accountable Care Organizations. He can now report on what CMS allows and requires these organizations to tell patients.

**(4) Reasonableness of the agency's withholding of the requested documents** - HHS was unreasonable in three ways: the records were not exempt, processing time was excessive, and the administrative appeal process was not independent of the original decision.

(4A) RECORDS WERE NOT EXEMPT

Plaintiff's request asked for "signs," "standardized written notices," "templates," and "model language," which CMS gives to medical providers in Accountable Care Organizations. The request is Exhibit 1 in Plaintiff's Declaration. The following wording identifies the material. CMS used this wording when it published its Final Rule (76 *Federal Register* 67946-67947, 11/2/11):

- "CMS will develop appropriate language" for signs, which medical providers must display to patients.

- Medical providers must "make available standardized written notices developed by CMS to the Medicare FFS beneficiaries whom they serve." [FFS-Fee For Service]
- CMS may supply "templates or model language for ACOs to use in marketing materials".

Similar wording is codified at 42 CFR 425.310(c)(1) and 425.312(a). The wording indicated that providers must offer some of the material to patients, and may offer them the rest.

The CMS denial letter, signed by Mr. Hugh Gilmore, withheld "the materials in their entirety, under Exemption 5 of the FOIA (5 U.S.C. § 552(b)(5))." The denial letter is Exhibit 2 in Plaintiff's Declaration.

The letter made conclusory mention of civil discovery privileges, attorney-client privilege and deliberative process privilege. It did not explain how any of these privileges applies to information already released to the public, i.e. doctors participating in Accountable Care Organizations, pursuant to a Final Rule. Accountable care Organizations are independent legal entities, separate from the government (42 CFR 425.104).

The documents are not pre-decisional, since Medicare has approved them for release to doctors in Accountable Care Organizations and to Medicare patients. The documents cannot contain recommendations on legal or policy matters, nor personal medical information, since their purpose is to tell patients factual information about the Accountable Care Organizations.

The two *Federal Register* pages cited above and referenced in the FOIA request have numerous statements confirming the public nature of the documents, as shown in Exhibit 5, page 12, of Plaintiff's Declaration.

There was no basis for withholding, since a claim of privilege cannot apply to information which doctors "make available" to the public.

**(4B) EXCESSIVE PROCESSING TIME**

A first-in first-out principle of processing FOIA requests was endorsed by Open America v. Watergate Special Prosecution Force, 547 F.2d 605 at 616 (D.C. Cir. 1976).

CMS had 3,383 FOIA requests pending September 30, 2013. One of them was Plaintiff's. They received another 26,361 during the next 12 months, and processed 25,027, which could have covered the entire 3,383 backlog (Exhibit 9, page 16, in Plaintiff's Declaration, taken from Table V. A. of *HHS Fiscal Year 2014 Freedom of Information Annual Report*). However Plaintiff's request was still pending at the end of the 12 months, and languished until 2/25/2015.

Plaintiff's request was one of the simplest, since the material sits on a CMS web portal, readily accessible to Accountable Care Organizations and to CMS (Exhibit 6). 16,341 other "simple requests" were indeed processed in 20 days or less during FY 2014 (Exhibit 10). All these were received after, and processed before, Plaintiff's request.

The median time to process a simple FOIA request at CMS was 11 days in 2013, 14 days in 2014, and 10 days in 2015; even complex requests had median response times of 2, 3 and 22 days (Exhibit 11). It was unreasonable that CMS took hundreds of days for this request, and it was contrary to the first-in first-out principle.

**(4C) NOT AN INDEPENDENT APPEAL PROCESS**

HHS gave authority to resolve or delay the administrative appeal to Mr. Gilmore, the CMS FOIA Officer who originally denied the request, while bypassing the independent HHS offices who are responsible for administrative appeals under the law and regulations.

FOIA establishes for requesters, "the right of such person to appeal to the head of the agency any adverse determination" (5 U.S.C. §552(a)(6)(A)(i)). HHS Rules say that HHS names a "review official identified in the denial letter" (45 CFR 5.34(a)). The denial letter identifies "The Deputy Administrator and Chief Operating Officer, CMS" (Exhibit 2). HHS Rules require,

> "... the designated review official will consult with the General Counsel to ensure that the rights and interests of all parties affected by the request are protected. Also, the concurrence of the Assistant Secretary for Public Affairs is required in all appeal decisions, including those on fees. When the review official responds to an appeal, that constitutes the Department's final action on the request..." (45 CFR 5.34(c))

CMS has its own Rules at 42 CFR 401.148, which allow the Administrator to delegate review. CMS is unreasonable if the Administrator delegates to the original deciding official. Such delegation defeats the purpose of having an appeal.

The staff who contacted Plaintiff about resolving the appeal, and who did resolve it, were the original deciding official, Mr. Gilmore, and his staff, not an independent reviewing official.

On January 4, 2016, while the appeal was pending, Mr. Derrick McNeal, who works for Mr. Gilmore, called Plaintiff and said HHS policy is that only Accountable Care Organizations have access to the written documents, so Plaintiff was not allowed to have them (Plaintiff's Declaration paragraph 7).

As detailed in Plaintiff's Declaration paragraphs 9-10, on June 7, 2016 Mr. Gilmore and two of his staff, Mr. McNeal and Mr. Paul Levitan, telephoned the Plaintiff with authority to negotiate resolution of the appeal. Mr. Gilmore said he was "calling about [the] appeal" and that he was "aware of the litigation." They said the agency could take weeks or years to release the documents, but offered to release them in three days if Plaintiff withdrew his appeal. Plaintiff did not do so, but they released the documents anyway the next day, with no mention of decisions by the agency head, Deputy Administrator, General Counsel, or Assistant Secretary for Public Affairs, who are the officials specified by law and regulation.

Plaintiff accepts the release, but believes the involvement of Mr. Gilmore and his staff in the appeal was unreasonable, and an independent review process could have released the documents far sooner and without need for court action.

## CONCLUSION

Plaintiff should not have had to pay $400 and bring this into court, in order to get 17 pages which were clearly not privileged, were not exempt from disclosure, and are important in revealing how CMS governs information for patients about its Shared Savings Program.

Plaintiff has attached a proposed order, as required by Local Civil Rule 7(c).

July 11, 2016                        Respectfully submitted,

*/s/ Paul Burke*

_____
Paul Burke, *Pro Se*
29 Dance Lane
Harpers Ferry, WV 25425
304-876-2227
PaulBurke@Globe1234.info