## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

PAUL BURKE, *Pro Se*                              |

      Plaintiff,                                  |

vs.                                              |     Case: 1:16-cv-00825 (CRC)

U.S. DEPARTMENT OF HEALTH AND          |
     HUMAN SERVICES                           |

Defendant.                                       |

## DECLARATION OF PAUL BURKE

I, Paul Burke, declare as follows:

1.      I write and manage web pages at aco.Globe1234.com, with information on Accountable Care Organizations ("ACOs") which serve Medicare patients. The web pages summarize rules, data, comments by others, the difficulties for patients in learning about ACOs, and implications for better patient care and for achieving cost savings in the Medicare program. I pay the site's costs; it does not take advertisements. The documents obtained by this FOIA request are posted at Globe1234.info/medicare/informing. I will also post an analysis when it is ready.

2.      On July 15, 2013, I submitted a FOIA request to the Centers for Medicare and Medicaid Services ("CMS"), which is part of the US Department of Health and Human Services ("HHS"). My request asked for explanatory material which CMS wrote and distributed to ACOs. Those offices, in turn, provide the material to Medicare patients. My request is Exhibit 1.

3.      On February 25, 2015, after 590 days and numerous phone calls between the parties, Mr. Hugh Gilmore of CMS denied the request. His denial is Exhibit 2.

4.      On March 26, 2015, HHS received my administrative appeal, as shown by the Postal Service receipt, Exhibit 3.

5.      On June 4, 2015, I contacted the Office of Government Information Services ("OGIS"), since one of its functions is to "offer mediation services to resolve disputes" under the FOIA (5 U.S.C § 552(h)(3)).

6.      On August 5, 2015 OGIS sent me an email, Exhibit 4. The email said that CMS had satisfied the OGIS Deputy Director and an OGIS staff member, that in administrative appeals, "... the agency provides a de novo review of its initial action on a request." The email also said they understood that "... Mr. Gilmore's office is responsible for logging CMS FOIA appeals in the agency's tracking system ..."

7.      On January 4, 2016 Mr. Derrick McNeal called me and said HHS policy is that only Accountable Care Organizations have access to the written documents, so I was not allowed to have them. He asked me to re-state what I was requesting. My re-statement is Exhibit 5. Mr. McNeal wrote back saying the documents are on a web portal accessible to ACOs and not to the public (Exhibit 6). I was told later that Mr. McNeal is Mr. Gilmore's subordinate (see paragraph 9 below).

8.       On May 3, 2016, I filed a court appeal, since I had received no written decision. I paid a $400 filing fee as shown by Exhibit 7 and the Clerk's entry for item 1 of the case docket.

9.      On June 7, 2016, Mr. Gilmore (who issued the original denial) telephoned me about the administrative appeal. Two other staff identified themselves on the call: Mr. Paul Levitan said that he is the boss of Mr. McNeal, also on the call, and that his own boss is Mr. Gilmore. Mr. Gilmore explicitly said he was "calling about [the] appeal" and that he was "aware of the litigation." He said he was not seeking withdrawal of the litigation, which could continue. He said that if I sent an email withdrawing the administrative appeal, HHS would send the requested documents within three days. He also said that if I did not withdraw the administrative

appeal and waited for a decision, HHS would take 5-6 weeks to send the same information. Mr. Levitan said "5-6 weeks is optimistic. We've seen this go on for years." Mr. Gilmore offered to send a "document saying the court case survives" in the absence of the administrative appeal. I was not clear how that would work, and I was not willing to drop the administrative appeal before seeing the documents, and with no agreement in writing. Exhibit 8 shows the email where I documented the conversation.

10.     On June 8, 2016, Mr. McNeal emailed me the documents, even though I had not dropped the appeal, and without any other action on my part.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, that Exhibits 1 through 8 attached hereto are true and correct copies except for redactions of private identifiers such as email and US mail addresses, and that Exhibits 9 through 12 contain true screen images from the CMS website as of July 8 or July 10, 2016, with red lines added.

Executed on: July 11, 2016

_Paul Burke_

_____
Paul Burke

Exhibits
1 - FOIA Request from Paul Burke Submitted to HHS Online July 15, 2013
2 - Denial Letter from HHS to Paul Burke, February 25, 2015
3 - Postal Service Receipt for Administrative Appeal, March 26, 2015
4 - Email from OGIS to Burke Describing de Novo Appeals, August 5, 2015
5 - Email from Burke to Derrick McNeal Restating Request, CMS, January 4, 2016
6 - Email from Derrick McNeal, CMS, to Burke Saying Documents on Portal Not Available to Burke, January 5, 2016
7 - Receipt for Filing Fee, May 3, 2016
8 - Email June 8, 2016 from Burke to Hugh Gilmore, CMS, Documenting Previous Day's Conversation
9 - Flow of FOIA Requests at HHS in FY 2014
10 - Response Times for Simple FOIA Requests at HHS in FY 2014
11 - Median FOIA Response Times at HHS in FY 2013-2015
12 - Extract of HHS Press Release, June 6, 2016

### Exhibit 1 - FOIA Request from Burke Submitted to HHS Online July 15, 2013, Control # 071620137079

I request copies of language provided by Medicare to Accountable Care Organizations for signs and informing beneficiaries about the Shared Savings Program, as identified on pp.67946-67947 of the Federal Register 11/2/11 (ACO Final Rule)


P.67946 said Medicare would provide language for signs and notices:

"Nor should posting signs be inappropriately burdensome, since CMS will develop appropriate language"

"make available standardized written notices developed by CMS"

P.67947 said Medicare may provide language for marketing materials:

"To the extent that CMS supplies templates or model language for ACOs to use in marketing materials, we will ensure it complies with the Plain Writing Act of 2010."


The signs and notices tell patients that the facility is part of an ACO, that the patient may go elsewhere if desired, how to opt out of data sharing, and other issues.


I requested signs and written notices from aco@cms.gov, and they answered, " We provide the standardized written notices to ACOs upon acceptance to the program. They are not available on our website." (see below)

So Medicare was able to identify what I need, and it is readily available.


I am an individual seeking information for personal use and not for a commercial use.

I am willing to pay fees for this request up to a maximum of $100. If you estimate that the fees will exceed this limit, please inform me first.

I request that the information I seek be provided in electronic format, by email.

If you have any questions about handling this request, you may call me at 304-876-2227.

----------------
from: Globe1234.com Researcher
to: aco@cms.hhs.gov
sent: Wed, Jul 10, 2013 at 3:46 PM
subject: standardized written notices developed by CMS

Dear Ms Weiss:

The 11/2/11 final rules for ACOs say participants will provide the public:

"standardized written notices developed by CMS" to tell patients that the facility is part of an ACO, and the patient may go elsewhere if desired. (Federal Register 11/2/11 p.67946)

I do not find these "standardized written notices" on your websites. Could you point me to a link, or send them to me?

I am interested in handouts and signs if you have standard versions.

Thank you,

Paul Burke

304-876-2227

-------------
from: CMS ACO - CMSACO@cms.hhs.gov
to: Globe1234.com Researcher
date: Thu, Jul 11, 2013 at 5:32 AM
subject RE: standardized written notices developed by CMS

Dear Mr. Burke,

Thank you for your interest in the Medicare Shared Savings Program. We provide the standardized written notices to ACOs upon acceptance to the program. They are not available on our website.

Sincerely,

Medicare Shared Savings Program Staff
7500 Security Blvd. Baltimore, MD 21244
ACO@cms.hhs.gov

## EXHIBIT 2 - DENIAL LETTER FROM HHS TO BURKE, FEBRUARY 25, 2015

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop N2-20-16
Baltimore, Maryland 21244-1850



---

**Office of Strategic Operations and Regulatory Affairs /Openness, Transparency and Accountability Group**

Refer to: Control Number 071620137079 and PIN [Private identifiers redacted]

Paul Burke

FEB 2 5 2015

Dear Mr. Burke:

This is in response to your July 15, 2013, Freedom of Information Act (FOIA) (5 U.S.C. § 552) request submitted to the Center for Medicare & Medicaid Services (CMS) or one of this agency's Medicare contractors via letter, facsimile transmission or e-mail seeking copies of language provided by Medicare to Accountable Care Organization for signs and informing beneficiaries about the Shared Savings Program. Documents responsive to your request, consisting of 17 pages, were forwarded to this agency because of my responsibility for administering the FOIA.

After a careful review of the 17 pages forwarded to this office for review and release determination, I have determined to withhold the materials in their entirety, under Exemption 5 of the FOIA (5 U.S.C. § 552(b)(5)).

Exemption 5 of the FOIA permits an agency to withhold "inter-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Documents that are privileged in the context of civil discovery are thus exempt from release under Exemption 5. Among the civil discovery privileges incorporated into Exemption 5 are attorney-client privilege and the deliberative process privilege.

Exemption 5's Deliberative Process Privilege is being invoked in order to prevent injury to the quality of agency decisions by preserving the ability of agency employees to engage in free and candid discussions on matters of policy. The Deliberative Privilege applies to inter-agency or intra-agency communications that are (1) pre-decisional, i.e. antecedent to the adoption of an agency policy and (2) deliberative, i.e. a direct of the part of the deliberative process in that it makes recommendations on legal or policy matters.

Page 2 - Burke

You have the right to appeal this decision. To do so, you must put your appeal in writing and send it within 30 days to: The Deputy Administrator and Chief Operating Officer, CMS, Room C5-16-03, 7500 Security Boulevard, Baltimore, Maryland 21244-1850. Please mark the envelope containing your letter of appeal, "Freedom of Information Act Appeal" and enclose a copy of this letter with your appeal.

Sincerely,

Hugh Gilmore
Director
Division of Freedom of Information

Enclosure

**EXHIBIT 3 - POSTAL SERVICE RECEIPT FOR ADMINISTRATIVE APPEAL, MARCH 26, 2015**



Date: March 26, 2015

Paul Burke:

The following is in response to your March 26, 2015 request for delivery information on your Priority Mail Express® item number EK353944455US. The delivery record shows that this item was delivered on March 26, 2015 at 11:07 am in WINDSOR MILL, MD 21244 to L EDMON. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.

If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,
United States Postal Service

EXHIBIT 4 - EMAIL FROM OGIS TO BURKE DESCRIBING DE NOVO APPEALS, AUGUST 5, 2015

**Subject: Re: Office of Government Information Services (OGIS) Case No. 201500798**
From: Christa Lemelin **[Private identifiers redacted]**          Wed, Aug 5, 2015 at 4:31 PM
To: "Globe1234.com Researcher"
Dear Mr. Burke:

This email is in reference to Office of Government Information Services (OGIS) case No. 201500798. I am sorry for my delay in following up with you.

When we discussed your dispute on June 17, 2015, you expressed your concern that the Centers for Medicare & Medicaid Services (CMS) assigned your pending Freedom of Information Act (FOIA) appeal to the same employee who signed the letter responding to your initial request (Hugh Gilmore, CMS's FOIA Officer). OGIS Deputy Director Nikki Gramian and I contacted CMS to discuss the agency's appeals process. CMS FOIA staff explained the agency's appeal process and directed us to the relevant FOIA regulations.

The Department of Health and Human Services' (HHS) FOIA regulations explain the role of CMS's Freedom of Information Officer (Mr. Gilmore) in determining the appealed response to a request. HHS's FOIA regulations are available online at http://www.gpo.gov/fdsys/pkg/CFR-2002-title45-vol1/pdf/CFR-2002-title45-vol1-part5.pdf. CMS's FOIA regulations are available online at          http://www.gpo.gov/fdsys/pkg/CFR-1999-title42-vol2/pdf/CFR-1999-title42-vol2-part401.pdf.

42 CFR 401.148 of CMS's regulations describes the agency's appeal process. While Mr. Gilmore's office is responsible for logging CMS FOIA appeals in the agency's tracking system, CMS sends all records and information concerning the appealed request to the Deputy Administrator and Chief Operating Officer for review of the initial decision and the findings upon which CMS based the decision. In their review, the Deputy Administrator and Chief Operating Officer consider any written argument and evidence provided in the appeal. The final decision on the appeal is made in consultation with the agency's General Counsel, the Assistant Secretary for Public Affairs and the appropriate program official. This multi-level review provides checks and balances to help ensure that the agency provides a de novo review of its initial action on a request.

I hope you find this information useful. Please contact me if you have any questions.
Best,
Christa Lemelin

### EXHIBIT 5 - EMAIL FROM BURKE TO DERRICK MCNEAL, CMS, RESTATING REQUEST, JANUARY 4, 2016

**Subject: Burke FOIA appeal 071620137079**
From: Paul Burke  **[Private identifiers redacted]**          Mon, Jan 4, 2016 at 4:06 PM
To: Derrick McNeal

Thanks for your phone call this afternoon.

I tried to be as clear as possible in the attached pdf.

Please call if you have any questions.

Paul Burke

                                        304-876-2227
_____

[CONTENTS OF ATTACHED PDF:]

Email to Derrick McNeal

**A.** On 7/15/13 I submitted FOIA 071620137079, which used the language in the box below to identify the documents requested (emphasis added):

---

I request copies of **language provided by Medicare** to Accountable Care Organizations **for signs and informing beneficiaries** about the Shared Savings Program, as identified on pp.67946-67947 of the Federal Register 11/2/11 (ACO Final Rule)

P.67946 said Medicare **would** provide language for **signs** and **notices**:

- "Nor should posting **signs** be inappropriately burdensome, since **CMS will develop appropriate language**"
- "make available standardized written **notices developed by CMS**"

P.67947 said Medicare **may** provide language for **marketing materials:**

- "To the extent that CMS supplies **templates or model language** for ACOs to use in **marketing materials**, we will ensure it complies with the Plain Writing Act of 2010."

The signs and notices tell patients that the facility is part of an ACO, that the patient may go elsewhere if desired, how to opt out of data sharing, and other issues.

---

**B.** My appeal still seeks these same items:
- "signs" which CMS has provided to ACOs
- "standardized written notices" which CMS has provided to ACOs for informing beneficiaries about the SSP

- "templates or model language for... marketing materials" which CMS has provided to ACOs

**The FOIA referenced two Federal Register pages, which further discuss the public nature of the materials needed.**

**p. 67946**

- we retain a notification policy in this final rule...

- our proposal to inform beneficiaries at the point of care...

- posting signs will serve the purpose of calling the attention of beneficiaries to the existence of the ACO and the choice of the ACO participant and its ACO providers/suppliers to participate in it, ultimately resulting in increased transparency...

- The presence of signs and written materials will provide a useful initial notification for every beneficiary...

- **Nor should posting signs be inappropriately burdensome, since CMS will develop appropriate language.**..

- we believe that it is appropriate to finalize the requirement that the ACO agree to post signs in the facilities of ACO participants indicating the ACO provider's/supplier's participation in the Shared Savings Program and make available standardized written notices to Medicare FFS beneficiaries whom they serve...

- *Final Decision:* We are finalizing our proposal to require ACO participants to post signs in their facilities indicating their associated ACO provider's/supplier's participation in the Shared Savings Program and to **make available standardized written notices developed by CMS** to Medicare FFS beneficiaries whom they serve...

**p. 67947**

- we will make template language available for certain marketing materials and require that such template language be used when available...

- **To the extent that CMS supplies templates or model language for ACOs to use in marketing materials, we will ensure it complies with the Plain Writing Act of 2010...**

**C.** Mr. Gilmore's 2/25/15 denial letter said 17 pages of responsive documents were identified. Can you list them so we can discuss them further? How many are signs? How many notices? How many templates?

Thank you,
Paul Burke

**EXHIBIT 6 - EMAIL FROM DERRICK MCNEAL, CMS, TO BURKE SAYING DOCUMENTS ON PORTAL NOT AVAILABLE TO BURKE, JANUARY 5, 2016**

**Subject: RE: Burke FOIA appeal 071620137079**
From: McNeal, Derrick E. (CMS/OSORA) **[Private identifiers redacted]**

Tue, Jan 5, 2016 at 2:42 PM

To: Paul Burke

Medicare approved ACOs have access to the templates and other materials through the CMS Enterprise Portal which is accessible to the ACO by logging into the portal with their CMS users ID.  The templates and guidance documents are not available on the CMS public website.


> From: Paul Burke
> Sent: Tuesday, January 05, 2016 2:40 PM
> To: McNeal, Derrick E. (CMS/OSORA)
> Subject: Re: Burke FOIA appeal 071620137079


> again



> On Mon, Jan 4, 2016 at 1:06 PM, Paul Burke  wrote:

> Thanks for your phone call this afternoon.

> I tried to be as clear as possible in the attached pdf.

> Please call if you have any questions.

> Paul Burke

**EXHIBIT 7 - RECEIPT FOR FILING FEE, MAY 3, 2016**

```
Court Name: District of Columbia
Division: 1
Receipt Number: 4616077366
Cashier ID: CLesley
Transaction Date: 05/03/2016
Payer Name: PAUL BURKE
------------------------------------
CIVIL FILING FEE
  For: PAUL BURKE
  Amount:        $400.00
------------------------------------
CREDIT CARD
  Amt Tendered:  $400.00
------------------------------------
Total Due:       $400.00
Total Tendered:  $400.00
Change Amt:      $0.00

16-825


Only when the bank clears the
check, money order, or verifies
credit of funds, is the fee or debt
officially paid or discharged.  A
$53 fee will be charged for a
returned check.
```

**EXHIBIT 8 - EMAIL JUNE 8, 2016 FROM BURKE TO HUGH GILMORE, CMS, DOCUMENTING PREVIOUS DAY'S CONVERSATION**

**Subject: June 7 call, on Burke FOIA appeal 071620137079**
From: Paul Burke **[Private identifiers redacted]**      Wed, Jun 8, 2016 at 11:18 AM
To: Hugh Gilmore
Re: FOIA appeal 071620137079

Dear Mr. Gilmore,

Thanks for your phone call Tuesday morning June 7. I understand you offered to drop the assertion of exemptions, and to provide the documents I requested, if I first drop the administrative appeal.

I also appreciate your offer that you weren't asking me to drop the court case, and that after I dropped the administrative appeal, you could give me a "document saying the court case survives" in the absence of the administrative appeal, though I am not sure how that would work. Can you point me to any information on this?

I understand your estimate that you have some way to release the documents by Friday if I drop the appeal, but that if I don't drop it, you will need to "go through proper channels, which takes 5-6 weeks," though your staffer Mr. Levitan said he'd seen it take years.

While I am not willing to drop the rights I have under the administrative appeal before seeing the documents, and in the absence of any written agreement to make everything clear, if you send the documents, and they are what I asked for in the FOIA request, then I can look at dropping further legal action.

If I have misunderstood, please let me know. As I said at the end of our phone call, if there's another approach which doesn't involve me dropping the administrative appeal before seeing the documents, let's talk again.

Paul Burke

EXHIBIT 9 - FLOW OF FOIA REQUESTS AT HHS IN FY 2014

**Source: HHS Fiscal Year 2014 Freedom of Information Annual Report**
www.hhs.gov/foia/reports/annual-reports/2014



# V. A. FOIA REQUESTS -- RECEIVED, PROCESSED AND PENDING FOIA REQUESTS

| Component / Agency | Number of Requests Pending as of Start of Fiscal Year | Number of Requests Received in Fiscal Year | Number of Requests Processed in Fiscal Year | Number of Requests Pending as of End of Fiscal Year |
|---|---|---|---|---|
| OS | 388 | 1,531 | 1,605 | 314 |
| ACF | 154 | 1,864 | 1,255 | 763 |
| ACL | 0 | 13 | 11 | 2 |
| CDC | 578 | 1,141 | 1,028 | 691 |
| CMS | 3,383 | 26,361 | 25,027 | 4,717 |

**EXHIBIT 10 - RESPONSE TIMES FOR SIMPLE FOIA REQUESTS AT HHS IN FY 2014**

**Source: HHS Fiscal Year 2014 Freedom of Information Annual Report**
www.hhs.gov/foia/reports/annual-reports/2014



## VII. C. 1. PROCESSED REQUESTS -- RESPONSE TIME IN DAY INCREMENTS – SIMPLE REQUESTS

| Component / Agency | 1-20 Days | 21-40 Days | 41-60 Days | 61-80 Days | 81-100 Days | 101-120 Days | 121-140 Days | 141-160 Days | 161-180 Days | 181-200 Days | 201-300 Days | 301-400 Days | 401+ Days | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OS | 33 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 34 |
| ACF | 382 | 90 | 50 | 236 | 150 | 73 | 80 | 1 | 0 | 1 | 2 | 3 | 15 | 1,083 |
| ACL | 5 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 8 |
| CDC | 268 | 57 | 28 | 21 | 15 | 7 | 5 | 4 | 9 | 10 | 10 | 0 | 9 | 443 |
| CMS | 16,341 | 2,493 | 423 | 171 | 96 | 50 | 43 | 41 | 34 | 16 | 154 | 148 | 82 | 20,092 |

**EXHIBIT 11 - MEDIAN FOIA RESPONSE TIMES AT HHS IN FY 2013-2015**

www.hhs.gov/foia/reports/annual-reports

**Source: HHS Fiscal Year 2013 Freedom of Information Annual Report**



**Source: HHS Fiscal Year 2014 Freedom of Information Annual Report**



**Source: HHS Fiscal Year 2015 Freedom of Information Annual Report**



www.**hhs**.gov/foia/reports/annual-reports/2015/index.html

U.S. Department of Health & Human Services

ograms & Services    |    Grants & Contracts    |    Laws & Regulations

## VII. A. Processed Requests - Response Time for All Processed Perfected Requests

| Agency / Component | SIMPLE | | | | COMPLEX | | | | EX |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Median Number of Days | Average Number of Days | Lowest Number of Days | Highest Number of Days | Median Number of Days | Average Number of Days | Lowest Number of Days | Highest Number of Days | Median Number of Days |
| OS | <1 | 3.3 | <1 | 37 | 133 | 211.68 | 22 | 1395 | 70.5 |
| ACF | 27 | 78 | 1 | 791 | 63 | 143 | 1 | 765 | 10 |
| ACL | 23 | 33 | 13 | 90 | N/A | N/A | N/A | N/A | N/A |
| CDC | 33 | 101.39 | <1 | 1225 | 22 | 159.52 | <1 | 1334 | 59.5 |
| CMS | 10 | 10 | 1 | 191 | 22 | 73 | 1 | 1109 | 161 |

### Exhibit 12 - Extract of HHS Press Release, June 6, 2016

cms.gov/Newsroom/MediaReleaseDatabase/Press-releases/2016-Press-releases-items/2016-06-06.html

**cms.gov**/Newsroom/MediaReleaseDatabase/Press-releases/2016-Press-releases-items/2016-06-06.html



## Medicare Makes Enhancements to the Shared Savings Program to Strengthen Incentives for Quality Care

| | |
|---|---|
| **Date** | 2016-06-06 |
| **Title** | Medicare Makes Enhancements to the Shared Savings Program to Strengthen Incentives for Quality Care |
| **Contact** | press@cms.hhs.gov |

**Medicare Makes Enhancements to the Shared Savings Program to Strengthen Incentives for Quality Care**

The Centers for Medicare & Medicaid Services (CMS) today released a final rule improving how Medicare pays Accountable Care Organizations in the Medicare Shared Savings Program for delivering better patient care. Medicare is moving away from paying for each service a physician provides towards a system that rewards physicians for coordinating with each other. Accountable Care Organizations are a major part of that transition, rewarding providers that deliver high-quality, efficient, and coordinated care for patients.

Medicare bases Accountable Care Organizations' payments on a variety of factors, including whether the Accountable Care Organization can deliver high-quality care at a reasonable cost.  The final rule should help more Accountable Care Organizations successfully participate in the Medicare Shared Savings Program by improving the shared savings payment methodology and providing a new participation option for certain Accountable Care Organizations to move to the more advanced tracks of the program.

"Today's changes will encourage more physicians to improve patient care by joining Accountable Care Organizations, while also refining how the program measures success, so that current participants are better rewarded for quality," said CMS Acting Administrator Andy Slavitt. "These new flexibilities are based on significant input from participants and will help physicians prepare for the new Quality Payment Program, part of bipartisan legislation Congress passed last year repealing the failed Sustainable Growth Rate."

Already, the Medicare Shared Savings Program includes over 430 Accountable Care Organizations in 49 states and the District of Columbia serving over 7.7 million Medicare beneficiaries. This final rule changes how Medicare pays