**Exhibit A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Paul Burke, | ) | |
| | ) | |
| | ) | |
| Plaintiff, *pro se* | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-00825 (CRC) |
| | ) | |
| U.S. DEPARTMENT OF HEALTH | | |
| AND HUMAN SERVCES | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DECLARATION OF HUGH GILMORE

I, Hugh Gilmore, declare as follows:

1.      I am Director of the Freedom of Information Group (FIG), Office of Strategic Operations and Regulatory Affairs, Centers for Medicare & Medicaid Services ("CMS"), U.S. Department of Health and Human Services ("HHS" or "the Department").  In this capacity, I am the Freedom of Information Officer for CMS and have held this position since 2014.

2.      My duties include responding to requests made pursuant to the Freedom of Information Act, 5 U.S.C. § 522 ("FOIA").  This entails managing searches for CMS records, determining whether to release or withhold records or portions of records in accordance with FOIA and HHS implementing regulations, and overseeing all FOIA activities within CMS.

3.      I make this Declaration based upon my personal knowledge and information available to me in my official capacity.  The purpose of this Declaration is to explain the processing of records for a FOIA request that the HHS Office of the Assistant Secretary of Public Affairs of Health and Human Services referred to Centers for Medicare & Medicaid Services  and the withholdings made to these records pursuant to FOIA.

4.      On or about July 15, 2013, HHS, Office of Assistant Secretary for Public Affairs received a request for copies of language provided by Medicare to Accountable Care Organizations for signs and informing beneficiaries about the Shared Savings program.

5.      Accountable Care Organizations (ACOs) are groups of doctors, hospitals, and other health care providers, who come together voluntarily to give coordinated high quality care to their Medicare patients.   The goal of coordinated care is to ensure that patients, especially the chronically ill, get the right care at the right time, while avoiding unnecessary duplication of services and preventing medical errors.   When an ACO succeeds both in delivering high-quality care and spending health care dollars more wisely, it will share in the savings it achieves for the Medicare program.   It is not an HMO or Medicare Advantage Plan.

6.      The Medicare Shared Savings Program (Shared Savings Program) was established by section 3022 of the Affordable Care Act.   The Shared Savings Program is a key component of the Medicare delivery system reform initiatives included in the Affordable Care Act and is a new approach to the delivery of health care.   Congress created the Shared Savings Program to facilitate coordination and cooperation among providers to improve the quality of care for Medicare Fee-For-Service (FFS) beneficiaries and reduce unnecessary costs.   Eligible providers, hospitals, and suppliers may participate in the Shared Savings Program by creating or participating in an ACO.

7.      On or about July 16, 2013, the HHS Office of the Assistant Secretary of Public Affairs of Health and Human Services referred the FOIA request to CMS for response to the requester.

8.      On July 18, 2013, the request was sent for search among CMS components for responsive records.   The search first began with a component, Centers for Medicare and Medicaid Innovation (CMMI), which had no records.   The request was subsequently referred to another

component, Centers for Medicare Fee-For-Service (CM FFS), in August 2013. The records which consisted of seventeen pages of blank signs/templates of language were received from CM FFS on June 17, 2014. At approximately the same time, I began as the FOIA director at CMS.

9.      The purpose of the signs/templates is to notify beneficiaries that their ACO provider/supplier is participating in the Shared Savings Program and of the opportunity to decline claims data sharing. The signs/templates provide notice that the ACO provider/supplier is participating in the Shared Savings Program, and what that means for the care they receive. In addition, the patient is notified of the opportunity to decline claims data sharing. The signs/templates are intended for use by the individual ACO Participants (providers, etc.), and are not to be altered, with the exception of including the provider's contact information and logo.

10.     On August 27, 2014, Mr. Burke still expressed interest in the request after contact by the Freedom of Information Group (FIG) staff.

11.     On February 25, 2015, after the case was reassigned to another staff member, the agency released its initial response to withhold all 17 pages of responsive signs/templates. The agency invoked Exemption 5 of the Freedom of Information Act to prevent injury to the quality of agency decisions by preserving the ability of agency employees to engage in free and candid discussions on matters of policy under the deliberative process privilege.

12.     The CM FFS position was that the records were for the intended use of approved applicant ACO's, were on a restricted enterprise system accessed by user ID and password issued to only approved ACO's, Mr. Burke was not an approved ACO, and the records were made available to the public on ACO websites once an ACO's approved. The signs/templates could potentially be used for fraudulent Medicare billing by providers/suppliers that are not actual ACO Participants, but who obtain the signs/templates and insert their own personal information and logo

3

into the template.  CMS provides these templates to approved ACOs for distribution to ACO Participants.  The templates must be accessed through a secure portal that only approved ACOs (and CMS) have access to.  Non-ACO Participant providers/suppliers could potentially alter the templates with additional edits designed to deceive CMS and potentially use them for fraudulent Medicare billing.

13.     Mr. Burke appealed his denied request on March 24, 2015.

14.     CMS CMMI staff expressed concerns with the records being disclosed to the public.  The requester was not an ACO applicant, the records are available to approved applicants through password protected user ID access, and public disclosure of the templates may promote fraud.  These template records were safeguarded as proprietary and internal deliberative records and not published on public website by CMS.

15.     On January 4, 2016, FIG staff contacted the requester, Mr. Burke, to get a written clarification as to why the ACO published statements would not satisfy his needs.

16.     On January 5, 2016, the CMS FIG reached out to the component offices to determine if the records could be released through the appeal process.  The component offices were unwavering and replied that the records are provided to approve ACO applicants through the CMS Enterprise portal by password protection and an issued user ID.  The templates are not available to the public or on the public website.  The records are templates for standard required notices that the ACO are required to post in some instances on its website. The ACO completes these templates adding their logos and identifiers after its application is approved.  The concern by the program offices was the likelihood of imposters or masqueraders creating illegitimate records to commit fraudulent Medicare billing.

17.     On February 24, 2016, the CMS FIG staff began to prepare a proposed FOIA appeal decision package.

18.     On May 3, 2016, Mr. Burke filed this complaint.

19.     On June 8, 2016, CMS released all responsive records to Mr. Burke without any redaction.

I declare under penalty of perjury that the foregoing to true and correct, to the best of my information and belief.  28 U.S.C. § 1746.  Executed this _28th___ day of July, 2016.

Hugh Gilmore

5