UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

PAUL BURKE, *Pro Se*

    Plaintiff,

vs.

U.S. DEPARTMENT OF HEALTH AND
    HUMAN SERVICES

Defendant.

Case: 1:16-cv-00825 (CRC)

## PLAINTIFF'S REPLY TO DEFENDANT'S LATE OPPOSITION TO COSTS, AND PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Defendant needlessly complicates the single issue, which is payment of Plaintiff's $400 filing fee.

Defendant did not respond within 14 days to Plaintiff's July 11 Motion for Award of Costs, so Local Civil Rule 7(b) applies, "the Court may treat the motion as conceded."

Plaintiff and Defendant have tried to resolve the case without the Court's intervention, but have been unable to agree on terms. There is no evidence before the Court that Defendant offered to pay $400 in costs without long, multi-part conditions attached.

### MOTION TO DISMISS

Defendant's Motion to Dismiss is moot, because Plaintiff voluntarily dismissed the case June 30, as acknowledged by the Court's Minute Order July 1, "In light of [8] Plaintiff's notice of voluntary dismissal without prejudice..."

Defendant calls Plaintiff's notice of voluntary dismissal conditional and cites *Amore v. Accor N. Am.*, 529 F. Supp. 2d 85, 91 (D.D.C. 2008). Amore's notice of dismissal "conditions the dismissal on conducting jurisdictional discovery and amending the complaint..." Discovery and amendment were inconsistent with a dismissed case. Plaintiff's dismissal in this case had no

conditions. It noted that costs remained to be resolved. Resolving costs is consistent with a dismissed case, since costs survive dismissal of a Freedom of Information Act (FOIA) case (Carter v. VA, 780 F.2d 1479, 1481 (9th Cir. 1986); Anderson v. HHS, 3 F.3d 1383, 1385 (10th Cir. 1993)).

The open status of this case is not evidence on its dismissal. Other cases stay open after dismissal, to resolve fees and costs (*Citizens for Responsibility and Ethics in Washington v. U.S. Department of Justice*, DCD, 1:11-cv-00374-CRC, document 58).

Defendant wants the Court to negate the existing dismissal without prejudice, and immediately order another dismissal with prejudice, which seems unnecessary complication. Both dismissals are based on the same fact, that the Centers for Medicare and Medicaid Services (CMS) finally released the documents. Plaintiff currently accepts Defendant's representation that there are no other responsive documents, but if any are identified later, there might be a need to come back to court, so dismissal without prejudice seems appropriate.

### ELIGIBLE FOR COSTS

Defendant opposes paying costs. It does not contest eligibility (whether this action "substantially caused" the release of records), so eligibility may be taken as conceded. Furthermore Mr. Gilmore's Declaration, attached to Defendant's Motion, corroborates eligibility, because he lists no events, other than the court case, between February 24, 2016 and the decision to release the documents on June 8, 2016.

### ENTITLED TO COSTS

Defendant contends the information added little public information, since it was already available to patients of Medicare Accountable Care Organizations. However it was not available to the other 95% of Americans, as shown by Defendant's refusal to let Plaintiff see it. A year and a half ago, Plaintiff's January 14, 2015 email to Mr. Gilmore (Exhibit 1) said the FOIA would be

satisfied if "CMS could tell me where I can access and download the complete materials prepared by CMS." CMS never identified any place where Plaintiff or the public could get the information. A significant aspect is that the wording in the Federal Register and Code of Federal Regulations allows CMS to have optional templates, which must be used when Accountable Care Organizations do certain marketing, but are otherwise not required (42 CFR 425.310(c)). Then the only way to see the complete list of templates is to obtain it from Medicare.

The rules controlling Accountable Care Organizations are long and complex, including 190 pages at 76 *Federal Register* 67802 November 2, 2011 and 155 pages at 80 *Federal Register* 32692 June 9, 2015. The documents obtained in this request show the public which topics CMS chooses to explain to patients, in 17 pages.

Defendant cites *Tax Analysts v. U.S. Dep't of Justice*, 759 F. Supp. 28, 30 (D.D.C. 1991) and says "the information was already available." In *Tax Analysts*, the information was undisputedly available from District Courts. Defendant never said where the CMS documents were publicly available, and Plaintiff could not know whether any public website had a complete set of documents, since CMS refused to say. In fact CMS did not want the records to be "disclosed to the public" (¶ 14 of Gilmore Declaration).

CMS considers this program "a key component of the Medicare delivery system reform initiatives..." (¶ 6 of Gilmore Declaration), and the public cannot know the strengths or weaknesses of CMS' approach to patient information, unless the public sees the complete set of templates used in informing patients. *Tax Analysts* also quotes a 1986 decision, "FOIA suits which are motivated by scholarly, journalistic, or public interest concerns are the proper recipients of fee awards." *Alliance for Responsible CFC Policy*, 631 F. Supp. at 1471.

Defendant speculates that Plaintiff derives "psychic pleasure from filing lawsuits," with evidence that Plaintiff has participated when necessary in administrative reviews before West

Virginia administrative agencies and state courts. As with most litigants, this is not evidence of pleasure, but of exhausting other remedies. If Defendant had released the documents within the median 11 days for FOIA requests at CMS in 2013, there would have been no litigation. To avoid litigation, Plaintiff waited almost three years before going to court. Only after paying $400 and going to court did Plaintiff receive the documents.

As noted in the third paragraph of this reply, there is no evidence before the Court that Defendant offered to pay $400 in costs without lengthy multi-part conditions attached. The record does show Defendant originally offered the documents themselves with a condition attached, and only later released the documents unconditionally (¶¶ 9-10 in Plaintiff's Declaration attached to his Motion for Award of Costs).

Defendant's Memorandum and the CMS FOIA Director, Mr. Hugh Gilmore (Declaration ¶ 12) say CMS refused to release the documents, because CMS does not release them to the public and requires a user ID. This is circular, does not relate to any of the legal exemptions, and mocks FOIA. The purpose of FOIA is to release documents which are not freely available. Mr. Gilmore, repeatedly alleges the potential for "fraudulent Medicare billing" as CMS' real reason for hiding the documents (¶¶ 12, 14, 16). Again he does not relate this speculation to a legal FOIA exemption or explain how public explanations of a program can lead to fraudulent billing. The documents do not give access to CMS billing systems. Government documents are often released under FOIA, and Mr. Gilmore does not explain how release leads to fraud. Mr. Gilmore also alleges the documents need to be protected as proprietary and internal deliberative records (¶¶ 11, 14), which they were not when they were released to Accountable Care Organizations.

While Mr. Gilmore stresses CMS opposition to public release, he also claims staff asked Plaintiff "why the ACO published statements would not satisfy his needs" (¶15). Plaintiff did not in fact receive a question why published statements were unsatisfactory. Plaintiff had confirmed

a year before, that if the documents were posted on the web, "then as we discussed, CMS could tell me where I can access and download the complete materials prepared by CMS" (Exhibit 1).

Defendant pretends three years of delay were caused by a month-long referral to the wrong office and two staff changes (¶¶ 8, 11 of Gilmore Declaration). Defendant does not deny that median processing time for simple FOIA requests in 2013-2015 was 10-14 days at CMS.

To prove the appeal process was independent of the original denial, Defendant cites only an email showing they told another office it was independent. However Mr. Gilmore confirms the appeal was handled by the same office which denied the original request (¶¶ 1, 10-11, 15-17).

Mr. Gilmore's indifference to FOIA exemption rules, to three years' delay, and to the importance of an independent, timely appeal process, is a dangerous problem. He is not an obscure FOIA official in a small agency. He manages FOIA requests and FOIA appeals at the United States agency with the largest budget, more than Social Security or the Defense Department (cbo.gov/publication/51111 and cbo.gov/publication/51112). FOIA is crucial to understand and monitor CMS activities, which govern health care for many Americans and govern most hospitals and doctors.

Plaintiff should not have had to wait three years, pay $400 and file in court, for 17 pages.

Plaintiff has attached a proposed order, as required by Local Civil Rule 7(c).

| | |
|---|---|
| August 4, 2016 | Respectfully submitted, |
| | *Paul Burke* |
| | _____ |
| | Paul Burke, *Pro Se* |
| | 29 Dance Lane |
| | Harpers Ferry, WV 25425 |
| | 304-876-2227 |
| | PaulBurke@Globe1234.info |